# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

GERMAN EMMANUEL CHAVEZ ENRIQUEZ

**CRIMINAL COMPLAINT**

Case Number: 2:21-MJ-22

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about October 21, 2021 in Hall County, in the Northern District of Georgia, defendant(s) did, distribute a controlled substance, that is fentanyl,

in violation of Title 21, United States Code, Section(s) 841(a).

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.    Yes

_____
Signature of Complainant
Joseph Thompson

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Fed. R. Crim. P. 4.1

| October 25, 2021 | at | Gainesville, Georgia |
|---|---|---|
| Date | | City and State |

J. CLAY FULLER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

/s/ J. Clay Fuller   2:33 p.m.
Signature of Judicial Officer

AUSA Jennifer Keen /  /
Jennifer.Keen@usdoj.gov

I, Joseph Thompson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is made in support of an application for an arrest warrant for **GERMAN EMMANUEL CHAVEZ ENRIQUEZ, A.K.A. "MANNY."**

2. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since April 13, 1997, where I began duty at the FBI Academy in Quantico, Virginia. While stationed at Quantico, I received extensive training in conducting federal investigations, to include interviewing witnesses, conducting surveillance, and making arrests. I am currently assigned to the FBI Gainesville field office, responsible for investigating violent crimes and drug trafficking in the North Georgia area.

3. Based upon my training, experience, and participation in other narcotics investigations, my accumulated knowledge from consultations with other law enforcement agents, and my numerous debriefings of narcotics offenders, I know that the following traits are common practices of narcotics traffickers:

    a. That illegal drug trafficking and money laundering are frequently continuing activities over many months and even years.

    b. That drug traffickers commonly conceal contraband and profits of their trafficking in locations in and about their residences, businesses, and places of distribution to prevent law enforcement authorities from identifying the proceeds of their drug trafficking. I know that traffickers often hide drugs, paraphernalia, guns, ammunition, currency, jewelry, financial statements, and other items related to their illegal activity. I know that traffickers tend to hide guns and narcotics in areas out of

plain view and routinely conceal narcotics in attics, basements, closets, and other storage areas, in and around their place of distribution.

c. That traffickers often cooperate and associate with a number of people involved in their illegal trafficking activity. As a result of the association and cooperation, the traffickers often possess documents and other items that identify other drug trafficking associates. Traffickers commonly maintain addresses or telephone numbers of their criminal associates in address books, journals, computer files or other types of papers, even if said items may be in code. Traffickers keep such information readily available so that they may transact narcotics business quickly and, also, so that they may be in constant contact should questions or difficulties arise in the course of their illegal endeavors. Additionally, I know that the nature of the drug business frequently necessitates that a trafficker's criminal associates change locations and contact phone numbers. Therefore, in order to keep up with those associates, it is necessary to keep accurate records of each individual's contact phones and addresses.

d. That drug traffickers commonly use multiple SIM cards, mobile or cellular telephones, smart phones (including but not limited to; Android and iOS based devices), personal digital assistants, electronic address books and pagers, as well as regular telephones, to conduct their drug trafficking business. These items are often kept where traffickers have ready access to them, including on their person, in their vehicles, in their place of residence, and in their place of business. These devices commonly contain information related to the drug trafficking activities, including telephone numbers of their criminal associates, voice and text or other electronic

       messages with their criminal associates, and photographs of criminal activities, including photographs of drugs/guns.

    e.    That traffickers keep records of their occupancy, ownership, and control of their businesses and residences on the premises of these locations and their places of distribution (including but not limited to correspondence or utility bills); and that persons using vehicles also commonly have with them documents showing ownership and control of the vehicles, such as title and insurance records, and registrations.

    f.    That drug traffickers often keep firearms and ammunition in their residences, businesses, and places of narcotics distribution to protect themselves, their narcotics and their proceeds during their narcotics trafficking activities.

4.    The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and/or information obtained from other agents and witnesses.  This affidavit is intended to show that there is probable cause for the requested complaint and does not set forth all my knowledge about this matter.

5.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a) (unlawful distribution of a controlled substance) and 846 (conspiracy to distribute a controlled substance) have been committed by **ENRIQUEZ.**

## PROBABLE CAUSE

6.    On September 04, 2021, a highly reliable Confidential Human Source, hereafter referred to as "CHS," reported that **ENRIQUEZ** was selling counterfeit roxicodone pills that were made with fentanyl and that **ENRIQUEZ** offered to sell the CHS a sample of 10 pills for $180.00.

7.      On September 10, 2021, the CHS met **ENRIQUEZ** at the Hooters restaurant at the Mall of Georgia in Buford, Georgia, in the Northern District of Georgia, and gave the CHS 10 pills as a sample for a future larger purchase.  This meeting was surveilled by law enforcement and surreptitiously video and audio recorded.  The pills tested positive for the presence of fentanyl by the Georgia Bureau of Investigation Crime Laboratory.

8.      On October 06, 2021, the CHS met **ENRIQUEZ** at the Chili's restaurant on Spout Springs Road in Flowery Branch, Georgia for the purpose of buying 1,000 fentanyl pills.  An unknown Hispanic male driving a dark blue Toyota Corolla drove **ENRIQUEZ** to the meeting.  At the meeting, **ENRIQUEZ** advised the CHS that he had enough pills to last through New Year's Day.  The CHS gave the unknown male $7,500.00. The unknown male took the money into the restroom and counted the money.  When the unknown male returned, **ENRIQUEZ** gave the CHS the 1,000 pills under the table (the actual count was 963), and the meeting concluded.  The meeting was surveilled by law enforcement and surreptitiously video and audio recorded.  Agents followed **ENRIQUEZ** and the unknown male from the restaurant to a house located at 983 Altavista Court, Sugar Hill, Georgia, where the surveillance terminated.

9.      On October 20, 2021, **ENRIQUEZ** advised the CHS he had 3,000 of the pills for sale for $18,000.00, and that he would meet him at the Dunkin Donuts restaurant in Gainesville, Georgia on October 21, 2021, where they could have breakfast and complete the deal.

10.     On October 21, 2021, at approximately 9:56 AM, law enforcement surveillance was initiated at 5235 Arbor View Way, Sugar Hill, Georgia 30518, the residence of **ENRIQUEZ**.  At approximately 9:59 AM, agents observed a green Kia Soul, bearing Georgia license plate TCI9501, parked in front of the residence.

11. At approximately 10:35 AM, agents observed the green Kia leaving the neighborhood and stopping at a RaceTrac gas station on GA Highway 20. **ENRIQUEZ** was identified as the driver and sole occupant of the vehicle. Agents followed the green Kia to the Dunkin Donuts in Gainesville, and observed **ENRIQUEZ** exiting the vehicle and meeting the CHS inside the restaurant. A short time later, the CHS and **ENRIQUEZ** were observed exiting the restaurant and getting into **ENRIQUEZ's** vehicle. The CHS gave law enforcement the signal that he had seen the pills and **ENRIQUEZ** was arrested. A large bag of pills was recovered inside the vehicle as well as four marijuana "blunts" and several hundred dollars in U.S. Currency.

12. **ENRIQUEZ** was transported to the FBI Gainesville office, where he was advised of his Miranda rights and agreed to talk to me. **ENRIQUEZ** advised that he had departed his house in the green Kia Soul and driven to the Dunkin Doughnuts for the purpose of selling the CHS 3,000 fentanyl pills. He further advised that he had approximately 2,000 additional pills located in his bedroom at his residence. At the conclusion of the interview, local law enforcement obtained an arrest warrant for **ENRIQUEZ,** and he was transported to the Hall County, Georgia Detention Center where he remains in custody.

13. On October 21, 2021, a federal search warrant was obtained in the Northern District of Georgia for **ENRIQUEZ's** residence. The warrant was executed at approximately 3:50 PM. The following items were seized as evidence from the residence: 1) a large vacuumed sealed bag containing approximately 314 grams of suspected fentanyl pills; 2) two smaller open bags of suspected fentanyl pills with a combined weight of approximately 178 grams; 3) two loaded pistols; 4) a large bundle of bulk cash totaling approximately $21,820.00; 5) a bag containing approximately 6 grams of suspected marijuana; 6) a bag containing approximately 4 grams of a

substance suspected to be psychedelic mushrooms;  7) one cellular telephone; and  8) one suspected counterfeit Rolex watch.

## CONCLUSION

14. Based on the above facts, I believe there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a) (unlawful distribution of a controlled substance) and 846 (conspiracy to distribute a controlled substance) have been committed by **ENRIQUEZ.**

15. It is therefore requested that a federal arrest warrant be issued in the Northern District of Georgia for **ENRIQUEZ**.